UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | **CV 12-3382 JGB (AGRx)** | Date | April 11, 2013 |
|---|---|---|---|
| Title | *Connie Franconero v. Universal Music Corp.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

**Proceedings:** **Order GRANTING Defendant's Motion to Dismiss (Doc. No. 35) (IN CHAMBERS)**

Before the Court is Defendant's Motion to Dismiss the Second Amended Complaint. ("Motion," Doc. No. 35.) After reviewing all papers filed in support of and in opposition to the Motion and the arguments presented at the April 8, 2013 hearing, the Court GRANTS the Motion to Dismiss WITH LEAVE TO AMEND.

**I. INTRODUCTION**

On December 6, 2012, Plaintiff Connie Franconero, previously known as Connie Francis ("Plaintiff" or "Francis"), filed the operative Second Amended Compliant against Defendant Universal Music Corp. ("Defendant" or "Universal").[1] (SAC, Doc. No. 31.) Plaintiff is a recording artist who has recorded over 1,000 compositions. (SAC, ¶ 1.)

The SAC alleges that on January 5, 1959, Universal and Francis entered into a contract. ("1959 Contract," SAC, ¶ 4.) The 1959 Contract required Francis to produce 16 "45 RPM record sides" each year for three years. (SAC, ¶ 4.) Universal manufactured and released for sale the 45 RPM records as singles and in the form of a record album. (Id.) Francis received five percent of the ninety percent taken in by Universal for the 45 RPM records manufactured and sold by Universal. (SAC, ¶ 5.)

---

[1] Universal has also gone by the name UMG Recordings, Inc. and is a successor to PolyGram Records, Inc, Polydor Incorporated, and MGM Records. (SAC, ¶ 2.) The Order refers to all current and former names of Defendant as "Defendant" or "Universal."

The SAC alleges that the 1959 Contract did not state a calculation of royalty payments for recordings not mechanically manufactured and sold by Universal. (Id.) The SAC states that "[i]t was separately, explicitly, and in the written [1959 Contract] provided as a condition and promise that both parties were required to arrive at a mutual agreement for the release of non-mechanical copies from the master, which are distributed and sold by unaffiliated third-party licensees under their own label." (Id.) The SAC cites a provision of the 1959 Contract which provides that Universal had the right:

> "To release, by mutual agreement between us, phonograph records of the compositions performed by you and recorded hereunder on any medium or device now or hereafter known under the name "MGM Records," or the primary label which we or our subsidiaries, affiliates, and licensees may from time to time elect."

(Id.) The SAC contends that if there is any ambiguity or conflict in the language of the 1959 Contract, "the course of dealing and contracts after the [1959 Contract] confirm a royalty payment by 50% of net revenue" for all licenses Universal made to unaffiliated third parties for non-mechanical recordings. (SAC, ¶ 6.)

Francis and Universal entered into a series of subsequent agreements and amendments following the 1959 Contract. In 1962, the 1959 Contract was amended in writing to continue the agreement for an additional five years. ("1962 Amendment," SAC, ¶ 8.) In November 1966, the parties agreed in writing to name Francis' production company, GGC Production Corp. ("GGC"), in place of her. ("1966 Contract," SAC, ¶ 8.) In January 1980, Francis, through GGC, entered into a new contract for additional recordings. ("1980 Contract," SAC, ¶ 9.) The 1980 Contract provided GGC with fifty percent of Universal's net royalties for any licenses Universal makes to non-affiliated third parties. (Id.)

The SAC contends that Universal granted unaffiliated third-party licenses of Francis' recordings through the internet for sale by download to consumers. (SAC, ¶ 10.) According to the SAC, these licenses are not recordings manufactured or sold by Universal. (SAC, ¶ 11.) Plaintiff alleges that Universal should render royalties to Frances in the amount of fifty percent of Universal's net proceeds received from third-party internet sales. (SAC, ¶ 11.) Instead, Universal calculates royalty payments as though Universal had manufactured and distributed 45 RPM records, at five percent of the ninety percent earned by Defendant. (SAC, ¶ 12.)

Based on these allegations, Plaintiff asserts four causes of action for (1) breach of the 1959 Contract; (2) breach of the 1966 Contract; (3) unjust enrichment; and (4) declaratory relief. (SAC, ¶¶ 15-29.)

Defendant filed a Motion to Dismiss the Second Amended Complaint on January 4, 2013. ("Motion," Doc. No. 35.) Plaintiff opposed on February 20, 2013. ("Opp'n," Doc. No.

44.)² Defendants replied on January 28, 2013. ("Reply," Doc. No. 35.)

## II. LEGAL STANDARD³

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In addition, the Court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 545. "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

## III. DISCUSSION

### A.   Requests for Judicial Notice

Defendant requests judicial notice of: (1) the 1959 Contract; (2) the 1966 Contract; (3) the 1980 Contract; (4) a November 20, 2002 letter from Plaintiff's counsel to Magistrate Judge Douglas F. Eaton, Southern District of New York in the action Francis v. UMG Recordings, Inc., No. 02 Civ. 1963 (LAK) ("New York Action"); (5) Plaintiff's brief in the new York Action filed on November 27, 2012; (6) Plaintiff's May 13, 2009 brief in the New York Action; and (7) the final judgment in the New York Action entered by the Honorable Barbara S. Jones, U.S. District Judge on September 21, 2012. ("Universal RJN," Doc. No. 35-2, Exhs. A-G.) The Court GRANTS Defendant's RJN as to all documents, except as to Exhibit D, the November 20, 2002 letter from Plaintiff's counsel to Magistrate Judge Eaton. The 1959, 1966, and 1980 Contracts (RJN, Exhs. A-C) are all alleged in the SAC, but are not attached. See Knievel v. ESPN, 393

---

² Plaintiff subsequently corrected her opposition on March 6, 2013. (Doc. No. 51.) All page numbers referenced in this Order will refer to the corrected opposition.

³ Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

F.3d 1068, 1076 (9th Cir. 2005) ("[U]nder the incorporation by reference doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.") (internal quotation omitted).  Exhibits E through G are motion papers and court orders filed in a federal court proceeding.  The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  The New York Action is directly related to this action as it involves the same parties and arises out of the same contracts at issue here.  These documents are judicially noticed "only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean."  United States v. S. California Edison Co., 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004).  Exhibit D is a letter sent from Plaintiff's counsel to the Magistrate Judge presiding in the New York Action. (RJN, Exh. D.)  It is not clear that the letter was filed in the New York Action or was part of the public record.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record. . . . Here, Defendants' request is limited to documents filed in the Wal-Mart litigation.")  Therefore, the Court DENIES Defendant's RJN as to Exhibit D.

  Plaintiff also submitted a declaration of Paul Sigelman requesting judicial notice of twenty-five documents.  ("Francis RJN," Doc. No. 44, corrected at Doc. No. 51, Exhs. 1-25.) The Court GRANTS IN PART and DENIES IN PART Plaintiff's request for judicial notice. Many of Plaintiff's documents duplicate those submitted by Defendant.  Exhibits 1, 5, 6, 7, 8, 9, 10, 12, and 21 are excerpts of the 1959 Agreement.  Exhibits 2, 3, 4, 13, and 14 are excerpts of the 1966 Agreement.  Exhibits 15, 16, and 17 are excerpts of the 1980 Agreement.  For the reasons discussed above, the Court GRANTS Plaintiff's request for judicial notice as to Exhibits 1-10, 12-17, and 21.  Exhibit 11 is a copy of the 1962 Amendment which is alleged in the SAC, the Court therefore GRANTS the request for judicial notice of Exhibit 11.  See Sprewell v. Golden State Warriors , 266 F.3d 979, 988 (9th Cir. 2001).  For the reasons discussed above, the Court also GRANTS Plaintiff's request for judicial notice of Exhibit 23, which is the Amended Complaint filed in the New York Action.  Similarly, the Court GRANTS judicial notice of Exhibit 22 which is a declaration of Jeremy M. Creelan filed in the New York Action and attaching a 1958 agreement between the parties.  As noted above, the Court only takes judicial notice of the existence of the documents filed in the New York Action, not "of one party's opinion of how a matter of public record should be interpreted."  United States v. S. California Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).

  However, the Court DENIES Plaintiff's remaining requests for judicial notice of Exhibits 18-20 and 24-25.  Exhibits 18 through 20 are copies of letters from Defendant to Francis or her representative dated March 16, 1982, April 7, 1983, and September 16, 1983.  These letters are not alleged in the SAC, nor are they documents on which the allegations in the SAC necessarily rely.  If the documents are not integral to the complaint, the Court should not consider them.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Moreover, documents subject to judicial notice are those which "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Plaintiff has not

shown that the letters are of indisputable accuracy. Exhibit 24 is a copy of the New York Department of State, Division of Corporations entity information for Defendant indicating its principal place of business is in California. The Court declines to take judicial notice of these irrelevant facts. See CYBERsitter, LLC v. People's Republic of China, 805 F. Supp. 2d 958, 964 (C.D. Cal. 2011). Finally, Exhibit 25 is the Settlement Agreement entered into by the parties in connection with the New York Action. This document is not referenced in the SAC, nor is it a matter of public record. Therefore, the Court declines to consider it.

**B.      Breach of Contract Claims**

   **1.     The Unambiguous Language of the Royalty Provision in the Agreements Controls**

As Plaintiff defines it, the disagreement in the instant action is the royalty rate owed to Plaintiff for Universal's distribution of digital downloads and ringtones under the 1959, 1962 and 1966 Contracts (collectively, "Agreements"). Defendant contends the royalty rate is five percent, while Plaintiff argues it should be fifty percent. (Opp'n at 3.) The parties agree that New York law applies to Plaintiff's claims and the contracts at issue.

The plain, unambiguous language of the Agreements is determinative here. See Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000) ("Contract language is unambiguous when it has a definite and precise meaning . . . and concerning which there is no reasonable basis for difference of opinion.") The sole paragraph in the 1959 Contract that calculates the payment of royalties derived from sales of Plaintiff's recordings is found in Section 5(a) which states:

> "We shall pay you for your services to be rendered hereunder and for the rights granted herein, a royalty of five percent (5%) of the suggested retail list price (exclusive of all taxes) of ninety (90%) percent of all records sold containing on both sides thereof a composition or compositions performed by you and recorded hereunder, manufactured and sold by us or by any subsidiary, affiliate or licensee, and one-half of such royalty for ninety percent (90%) of all records sold embodying such composition or compositions on only one side thereof."

(1959 Contract, Universal RJN, Exh. A, § 5(a).) The plain meaning of this paragraph indicates that Plaintiff's royalties are calculated at five percent of the ninety percent earned by Defendant from the suggested retail price of all records sold.

Plaintiff argues that the term "record" as used in Section 5(a) or the term "phonograph record" as used elsewhere in the Agreements must be limited to physical or material objects, not digital recordings. However, the plain language of other sections of the 1959 Contract and the subsequent 1966 Contract as well as relevant case law demonstrate the deficiency in Plaintiff's argument. Section 4(c) of the 1959 Contract states that Universal has the right to release "phonograph records of the compositions performed by you and recorded hereunder *on any medium or device now or hereafter known* . . . ." (1959 Contract, § 4(c)) (emphasis added.) Section 4(a) of the 1959 Contract similarly states that Universal has the right "[t]o manufacture,

advertise, sell, lease, license or otherwise use or dispose of, in any or all fields of use, and by any method now or hereafter known, throughout the world, phonograph records, tapes, wire and *other reproductions embodying the performances* to be recorded hereunder . . . ."  (1959 Contract, § 4(a) (emphasis added).)  Thus, the 1959 Contract contemplated that the term "phonograph record" included recordings on mediums other than those available in 1959, including intangible forms of recording developed thereafter.  Moreover, the 1966 Contract explicitly defines the terms "phonograph record" and "record" as "phonograph records and record albums of any r.p.m. and *any similar devices for the reproduction of sound reproduced on any material which may now or hereafter be known*, including, but not limited to, discs of wax, vinyl, or any other composition, or tape, film, or wire."  (1966 Contract, Universal RJN, Exh. B, § 1) (emphasis added.)  As such, the Agreements contemplated that the term "record" encompassed any future medium that transmitted Plaintiff's sound recordings, including digital downloads and ringtones.

Plaintiff attempts to limit the definition of "record" and "phonograph record" as used in the 1959 and 1966 Contracts by relying on the principle of *ejusdem generis* -- a canon of construction that limits general terms that follow specific ones to matters similar to those specified.  See Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2171 n.19 (2012).  However, as Defendant correctly notes, under New York law, this canon "is an aid to be used when the meaning of a word or phrase is unlear, but it is inappropriate where it renders words or phrases meaningless or otherwise defeats the parties' intent."  Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 371 F. Supp. 2d 571, 576 (S.D.N.Y. 2005).  As discussed above, the term "record" in the Agreements is not unclear.  The canon's application is inappropriate, where, as here, the parties unambiguously intended to expand, not limit, the definition of "record" to include future mediums.  Moreover, the canon is inapplicable here, as it is only to be used where the final item in a list is a general term.  See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) (*ejusdem generis* attributes to the last item in a sequence of items the same characteristic of discreteness that is shared by all the preceding items).  Section 4(c) does not include a list, and in the 1966 Contract, the definition at issue appears before the list and thus cannot be limited by the subsequent terms.  As such, the plain language of the Agreements controls, and the Court cannot use *ejusdem generis* to contrarily interpret the term "record" to exclude digital recordings.

In addition, several courts applying New York law have found that digital music files fall within the definition of recording "devices now or hereafter known."  Defendant's citation to Reinhardt v. Wal-Mart Stores, Inc., 547 F. Supp. 2d 346 (S.D.N.Y. 2008) is instructive.  In Reinhardt, the agreement provided that "records" or "phonograph records" meant "all forms of reproduction . . . now or hereafter known . . . ."  Id. at 354.  The court found that the language clearly and unambiguously authorized digital uses and that the phrase "now or hereafter known . . . reveals that future technologies are covered by the agreement."  Id.  The Court agrees with the interpretation in Reinhardt and finds that the definition of the term "record" as used in Section 5(a) of the 1959 Contract encompasses forms of recording known at the time and those developed since, including digital downloads.  See also Allman v. Sony BMG Music Entm't, 06 CV 3252 (GBD), 2008 WL 2477465, at *2 (S.D.N.Y. June 18, 2008) (finding that the term "phonograph record" contractually defined as "all forms of reproductions, now or hereafter

known" encompassed digital music files for purposes of calculating royalties).

The Court finds that the royalty rate for sales of digital downloads and ringtones of Plaintiff's recordings is controlled by the plain language of Section 5(a) of the 1959 Contract and relevant provisions of the 1966 Contract.

### 2. Other Sections of the Agreements Do Not Create Ambiguity

In both her SAC and opposition, Plaintiff ignores Paragraph 5(a) and instead argues that other provisions of the 1959 Contract support her argument that royalties for digital downloads are not controlled by the Agreements. Plaintiff specifically focuses on Section 4 of the 1959 Contract which outlines the rights and obligations of Universal.

Plaintiff proceeds on the theory that Section 4(a) allowed Universal to make, sell, license, or dispose of solely "material objects, such as phonograph records, tapes, wire and similar material objects, bearing copies of Francis' Recordings." (Opp'n at 8.) However, Section 4(c) required that "before [Universal] could move forward with exploitation of the Recordings in new media, [Universal] must reach a mutual agreement with Francis." (Opp'n at 10.) Plaintiff argues that the mutual agreement included an agreement as to the royalty calculation for all new media.

Section 4(c) states that Universal has the right:

> "to release, by mutual agreement between us, phonograph records of the compositions performed by [Francis] and recorded hereunder on any medium or device now or hereafter known under the name 'M-G-M Records,' or the primary label which [UMG] or our subsidiaries, affiliates and licensees may from time to time elect."

(1959 Contract, § 4(c).) Plaintiff's interpretation of this Section is entirely unsupported by the plain language. First, Section 4(c) does not state that the mutual agreement must include any renegotiation of royalties or in any way abrogates the royalty provision in Section 5(a). Second, as noted by Defendants, the phrase "mutual agreement between us" modifies the verb "to release." The clear interpretation of this phrase is that the parties were required to mutually agree on the release of Plaintiff's records, not on the royalties owed pursuant to the subsequent sale of those records. Third, even if Section 4(c) required the parties to mutually agree upon the royalties owed under the Agreements, there is no reason why this mutual agreement would be limited to future technologies such as digital recordings. In crafting this interpretation, Plaintiff ignores the language "any medium or device *now* or hereafter known." This phrase includes mediums and devices available in 1959, including material or physical objects, such as vinyl records. Finally, Plaintiff's interpretation of Section 4(c) conflicts with her argument that the term "phonograph records" excludes digital recordings. Importing Plaintiff's definition of phonograph record into Section 4(c) leads to the conclusion that no mutual agreement was necessary before Universal could release Plaintiff's digital recordings. For these four reasons, Plaintiff's interpretation of the 1959 Contract is inconsistent with the plain language and ignores provisions, namely Section 5(a), which control the payment of royalties at issue.

### 3. The Court Need Not Rely on the Parties "Course of Dealing"

In both her SAC and opposition, Plaintiff relies on the parties' "course of dealing"[4] since the Agreements to support her argument that Universal is obligated to pay Francis a royalty of fifty percent of revenues received from third-party internet transmissions of Plaintiff's recordings. (SAC, ¶ 6; Opp'n at 11-15.) Since the Court finds that the unambiguous language of the Agreements controls the royalty rate for digital downloads, extrinsic evidence including that related to the parties' "course of dealing" is inadmissible. See Constellation Power Source, Inc. v. Select Energy, Inc., 467 F. Supp. 2d 187, 210 (D. Conn. 2006) (applying New York law and stating that "in view of the Court's reliance on the clear language of the Letter Agreement, the Court need not rely on the parties' post-contract course of performance."); cf. Jobim v. Songs of Universal, Inc., 732 F. Supp. 2d 407, 416 (S.D.N.Y. 2010) ("Since the term 'all monies earned' is ambiguous, the court may look to extrinsic evidence in interpreting the Subpublishing Agreements. Such extrinsic evidence includes the contracting parties' course of performance.").

Plaintiff argues that reference to the parties' "course of dealing" regarding subsequent royalty payments is necessary here where the terms of the Agreements required Universal to obtain a future mutual agreement from Plaintiff. However, Plaintiff's argument is belied by the placement of the phrase "by mutual agreement between us" discussed above. The plain meaning of the phrase requires Universal to obtain future consent from Plaintiff before releasing her recordings. Even if Universal violated this provision, which Plaintiff's alleged "course of dealing" does not attempt to demonstrate, this alleged breach would not entitle Plaintiff to increased royalties.

The Court finds that the Agreements unambiguously provide the calculation of royalties on digital downloads as five percent of ninety percent earned by Universal from the suggested retail price of all copies sold. Thus, Plaintiff's first claim for breach of the 1959 Contract and second claim for breach of the 1966 Contract are DISMISSED insofar as they allege that Defendant breached the contracts by failing to pay royalties on Internet downloads.

### C. Unjust Enrichment / Money Had and Received

Under New York law, claims for unjust enrichment or money had and received can proceed only in the absence of a valid express contract. See MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 964 (2d Cir.1998) ("[T]he existence of a valid and enforceable written

---

[4] Plaintiff appears to use the phrase "course of dealing" to refer to the parties' agreements, payments, and correspondence subsequent to the Agreements. This definition conflicts with the one used under New York law. See Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc., 421 F. Supp. 2d 533, 540 (E.D.N.Y. 2005) ("A course of dealing is commonly defined as a sequence of *previous* conduct between the parties to an agreement . . . .") (emphasis added). Subsequent conduct between the parties is generally referred to as a "course of performance." See Jobim v. Songs of Universal, Inc., 732 F. Supp. 2d 407, 417 (S.D.N.Y. 2010). Nevertheless, for ease of understanding, the Court will use Plaintiff's definition of the phrase for the purpose of this Order.

contract . . . ordinarily precludes recovery in quasi contract [such as unjust enrichment] for events arising out of the same subject matter.") (internal quotations and citations omitted).  Here, the Court finds that the Agreements are valid and enforceable written contracts that control the payment of royalties arising from internet downloads.  Thus, Plaintiff's third claim for relief fails as it is based in theories of quasi-contact for "payments received by Defendant derived from internet downloads" -- the same subject matter as her contract claims.

Moreover, Plaintiff argues that Universal is unjustly enriched because its costs to license Plaintiff's recordings to internet companies for digital sales are negligible compared to the costs Universal incurred for the manufacture and sale of vinyl records at the time of the Agreements.  (SAC, ¶ 13.)  Therefore, Plaintiff contends that a fair royalty payment would be achieved by splitting the profits earned from the sale of digital downloads.  (Id.)  However, advances in future technologies were clearly anticipated by the Agreements.  The Agreements plainly govern the distribution and sale of Plaintiff's recordings via any "devices for the reproduction of sound reproduced on any material which may now or hereafter be known."  Thus, the emergence of digital sound recordings does not afford Plaintiff the right, under a theory of unjust enrichment, to rewrite the terms of the Agreements in order to secure a more favorable royalty formula.  See Allman v. Sony BMG Music Entm't, 06 CV 3252 (GBD), 2008 WL 2477465, at *2 (S.D.N.Y. June 18, 2008) (making this argument).

Since a valid and enforceable contract addresses the subject matter in dispute, Plaintiff's claims for unjust enrichment or money had and received fail as a matter of law.  The Court holds that Plaintiff's third claim for relief is DISMISSED WITH LEAVE TO AMEND.

**D.   Declaratory Relief**

Plaintiff's claim for declaratory relief relies on the allegation that "Universal is obligated to pay [Plaintiff] a fair percentage of net income which Universal receives from non-affiliated third party licenses for distribution and sale of internet downloads."  (SAC, ¶ 29.)  As discussed above, the Court finds that Universal's obligations regarding royalty payments on the sale and distribution of internet downloads are controlled by the terms of the Agreements.  Since an express agreement controls these payments, arguments regarding equity and fairness are moot.  Because the Court dismisses the underlying substantive claims, dismissal of Plaintiff's claim for declaratory relief is appropriate.  See Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (finding it appropriate to dismiss declaratory relief claim as redundant where there was no reason to believe it would resolve any issues aside from those already addressed by the substantive claims in the case).

Therefore, Plaintiff's fourth claim for declaratory relief is DISMISSED WITH LEAVE TO AMEND.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss WITHOUT PREJUDICE.  Plaintiff's allegations regarding the royalty rate owed to Plaintiff for

Universal's distribution of digital downloads and ringtones under the 1959, 1962 and 1966 Contracts are foreclosed by the plain language of the agreements.  All four of Plaintiff's claims are DISMISSED WITH LEAVE TO AMEND.  Any amended pleading is due within 14 days of the date of this Order.

**IT IS SO ORDERED.**